FILED'09 AUG 10 16:13 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TRACY L. CASSEZZA,                          CV 08-169-MA

        Plaintiff,                   OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

        Defendant.

ALAN R. UNKELES
1865 N.W. 169th Place
Beaverton, OR 97006
(503) 531-5370

        Attorneys for Plaintiff

KENT S. ROBINSON
Acting United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1117

1 - OPINION AND ORDER

TERRYE E. SHEA
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

     Attorneys for Defendant

MARSH, Judge.

     Plaintiff Tracy L. Casseza seeks judicial review of
the Commissioner's final decision denying her July 17, 2002,
application for disability insurance benefits under Title II of
the Social Security Act, 42 U.S.C. §§ 401-33.

     Plaintiff alleges she has been disabled since January 1,
1999, because of panic disorder.  Her claim was denied initially
and on reconsideration.

     On February 24, 2004, the Administrative Law Judge (ALJ)
held an evidentiary hearing on plaintiff's application, and on
June 25, 2004, issued a decision that plaintiff was not disabled.
On March 18, 2005, the Appeals Council denied plaintiff's request
for further review.  The ALJ's decision, therefore, was the
Commissioner's final decision for purposes of judicial review.

     On May 15, 2005, plaintiff filed an action in this court,
Cassezza v. Commissioner, 05-CV-702-KI, seeking review of the
Commissioner's final decision.  On April 6, 2006, Judge King
issued and Opinion and Order upholding the ALJ's finding by clear

and convincing evidence that plaintiff's testimony regarding her level of anxiety was not entirely credible.  Judge King also found the ALJ gave germane reasons for giving little weight to the lay witness testimony and medical opinion of Nurse Practitioner Leslie Myers because Nurse Myers relied in large part on plaintiff's less than credible subjective complaints in rendering her opinion.  Judge King, however, remanded the matter for further proceedings to give the Commissioner the opportunity "to explain why plaintiff's [residual functional capacity] is compatible with her ability to perform her past relevant work," or "[a]lternatively" to "proceed to step five."  See Opin. and Order at 13, issued Apr. 6, 2006.  (Doc. 15).  In addition, Judge King ordered the ALJ "to explain the weight" he gave to the opinions of agency physicians, Dr. Henry and Dr. Rethinger, regarding plaintiff's ability to perform simple, repetitive work. Id. at 9.

Judge King did not require the ALJ to take additional medical evidence or to reevaluate any finding other than plaintiff's residual functional capacity and its impact, if any, on plaintiff's ability to perform her past relevant work. Nevertheless, on August 22, 2006, the ALJ allowed plaintiff to supplement the record with an additional medical report, and conducted a second evidentiary hearing on September 29, 2006.

On September 29, 2006, the ALJ issued a decision on remand

that plaintiff was not disabled.  On December 8, 2007, the Appeals Council declined to review the ALJ's final decision and, therefore, that decision became the final decision of the Commissioner for purposes of judicial review.

Plaintiff now seeks an Order from this court reversing the Commissioner's final decision and remanding the case for the payment of benefits.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action with prejudice.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

On remand, at Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the onset of her alleged disability on January 1, 1999.

At Step Two, the ALJ found plaintiff suffers from a panic disorder and a depressive disorder that are both severe impairments under 20 C.F.R. 404.1520(c)(an impairment or combination of impairments is severe if it significantly limits

an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found that these impairments do not meet or equal any Listed Impairment.

At Step Four, the ALJ found plaintiff has the residual functional capacity to perform simple, repetitive, routine work with no public interaction.  She needs assistance with goal planning.  She has no physical limitations.  She is unable to perform her past relevant work involving skilled or semi-skilled jobs as a receptionist, secretary, administrative assistant, transcriptionist, and general officer worker.

At Step Five, the ALJ found plaintiff is able to perform a significant number of other jobs that exist in the national economy, such as small products assembler, line packager, and garment sorter.

Consistent with the above findings, the ALJ found plaintiff is not disabled and denied her claims for disability insurance benefits.

## LEGAL STANDARDS

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which . . .
has lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision
if it is based on proper legal standards and the findings are
supported by substantial evidence in the record as a whole.
42 U.S.C. § 405(g).  "Substantial evidence means more than a mere
scintilla but less than a preponderance; it is such relevant
evidence as a reasonable mind might accept as adequate to support
a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).

The court must weigh all of the evidence whether it supports
or detracts from the Commissioner's decision.  Martinez v.
Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's
decision must be upheld, however, even if the "evidence is
susceptible to more than one rational interpretation."  Andrews,
53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record.
DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty
to further develop the record, however, is triggered only when
there is ambiguous evidence or when the record is inadequate to
allow for proper evaluation of the evidence.  Mayes v. Massanari,
276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or

for immediate payment of benefits is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert.</u> <u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff argues on review following remand that the ALJ erred by (1) failing to give clear and convincing reasons for finding plaintiff's subjective complaints were not credible, (2) applying the wrong standard for rejecting Nurse Myers' opinion as to plaintiff's ability to work, (3) failing to consider Pat Pagano's treatment records regarding plaintiff's impairments, (4) failing to consider Dr. Alvarez's treatment records; and (5) failing to find plaintiff has a Listed Impairment.

Plaintiff does not specifically challenge the ALJ's finding regarding her residual functional capacity, *i.e.,* how it impacted her ability to perform her past relevant work, or the ALJ's analysis of the medical opinions of Dr. Henry and Dr. Rethinger, which are the issues on which the remand from Judge King was based.

For purposes of review, I incorporate by reference plaintiff's testimony and the medical evidence that was submitted

7  - OPINION AND ORDER

to the ALJ and Judge King before remand but do not repeat it
here.  In this Opinion and Order, I specifically set forth only
the new evidence, *i.e.,* plaintiff's testimony/evidence at the
second hearing, and any medical evidence gathered after remand.

## PLAINTIFF'S TESTIMONY/EVIDENCE

This evidence is drawn from plaintiff's hearing testimony on
August 22, 2006, her disability application, and corroborating
medical reports.  Plaintiff was 41 years old on the date of the
hearing.  As of that date, she was working out of her home as an
independent contractor, transcribing records for an insurance
adjusting company, for which she is paid $1.75 per page.  She has
not worked in any other capacity since February 2004.

Plaintiff was treated by psychiatrist Lynn Alvarez, D.O., on
a monthly basis from August 2004 until January 2005.  Dr. Alvarez
prescribed Lexapro to treat plaintiff's anxiety and depression.
She has also been prescribed Xanax and Valium in the past.

Plaintiff does not like to leave the home because she
suffers panic attacks when she does so.  If she needs to shop or
engage in other activities outside the house, she tags along with
her husband.  She is able to drive for short periods and does so
occasionally to go to a nearby coffee-shop or fast-food
restaurant.  She was able to take a family vacation in Hawaii.
She sometimes attends her children's basketball games if they are
near home.

Plaintiff described an incident nine years earlier when she was sexually harassed (touched and talked to inappropriately) by a co-worker.  No action was taken against the employee and she later saw correspondence between the Human Resources Department and her boss in which they were "looking for ways to get rid of me."

Plaintiff is able to perform office work as long as she can stay in her house.  She finds it difficult, however, to commit to be anywhere else.

### MEDICAL EVIDENCE

Lynn Alvarez, D.O. - Psychiatrist.

In August 2004, Dr. Alvarez examined plaintiff to evaluate her complaints of panic and anxiety.  Plaintiff was alert and oriented with normal speech and thought patterns.  Her mood was "anxious."

Plaintiff related that she "worries about everything," and in public she suffers from panic attacks that include a racing heart, sweating, lightheadedness, a feeling of impending doom, and being in a dream state.  She also has tight muscles, headaches, stomachaches, insomnia, and an inability to relax. She has decreased memory and energy, but her concentration, appetite, interest, and motivation are good.  She has been prescribed Paxil, Prozac, Serzone, Wellbutrin, Celexa, Valium, Lexapro, and Imipramine.  Celexa and Valium were the most

helpful.  Her father is an alcoholic and she witnessed domestic violence while she was growing up.

Dr. Alvarez diagnosed generalized anxiety disorder with a GAF score of 50 (serious impairment in social, occupational, or school functioning) and prescribed Klonopin to treat plaintiff's anxiety.

In September 2004,  Dr. Alvarez switched plaintiff's medications from Klonopin to Valium.  Plaintiff's affect was similar to that in August but her mood was "okay" rather than "anxious."

In October 2004, plaintiff felt poorly because she had sinusitis.  She was tired and did not want to leave her house. Otherwise her mood was the same as it was in September.

In November 2004, Dr. Alvarez's finding were essentially the same as in September and October.  Plaintiff indicated she takes Valium periodically and it helps.

In December 2004, plaintiff indicated she was feeling anxious but her moods were better.

In January 2005, plaintiff was feeling "pretty good."  She was starting to "venture out more into the world but still finds herself somewhat limited."

Patricia A. Pagano, LPC - Mental Health Counselor.

Plaintiff had 10 therapy sessions with Pagano.  Pagano submitted a report in September 2006, following the remand,

regarding her treatment of plaintiff in April 2000 that was not considered by the ALJ in his first decision.

In that report, Pagano states she "spent time" with plaintiff educating her regarding "the physical and psychological structure nature of panic and agoraphobia." Plaintiff drove to the second session without any anxiety. She arrived at the fourth session, however, with anxiety, and the remaining six sessions, therefore, were conducted by telephone. Pagano noted plaintiff "accomplished a lot of lost behaviors with her practice: eating in restaurants, being at soccer games for the kids, shopping, sitting through a movie with a friend." She had a "wide group of support" on the internet and was "practicing positive self-talk, assertiveness skills, and working through an anxiety-reducing workbook." Pagano, however, also reported that "[d]espite her commitment to change, she maintain[ed] a highly sensitized physiology that undermin[ed] the advances she [made]," and, as a result, she needed "supportive medication."

## ANALYSIS

a. **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ on remand failed to give clear and convincing reasons for not crediting her testimony regarding the severity of her impairments.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an

underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). <u>See also Cotton v. Bowen</u>, 799 F.2d 1403, 1407-08 (9th Cir. 1986). The claimant need not produce objective medical evidence of the symptoms or their severity. <u>Smolen v. Chater</u>, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993). <u>See also Smolen</u>, 80 F.3d at 1283. To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. <u>Id</u>. at 1284 (citations omitted).

In this case, Judge King specifically upheld the ALJ's original finding that plaintiff was not entirely credible,

12 - OPINION AND ORDER

concluding that "the ALJ gave clear and convincing reasons
supported by specific facts in the record in rejecting
plaintiff's claimed limitations as to the extent of her anxiety."
It is particularly noteworthy that Judge King's remand order did
not require the ALJ to revisit his earlier credibility finding.
Moreover, there is nothing in the record on remand that bolsters
plaintiff's credibility or demonstrates that the ALJ's original
credibility determination was not well-founded.

**b.**    **Rejection of Nurse Myers Evidence.**

Nurse Myers opined that plaintiff was unable to work outside
the home.   In his first decision, the ALJ evaluated Nurse Myers'
evidence as if she were a lay witness, and gave germane reasons
for rejecting her opinion that plaintiff was unable to work.
Judge King upheld the ALJ's rejection of Nurse Myers' opinion.
On remand, the ALJ again offered the same "germane" reasons for
not crediting Nurse Myers' disability opinion.

Plaintiff now asserts that since the ALJ's initial decision
in 2004, the Commissioner has revised the manner in which ALJs
should consider opinions from medical sources who are not
"acceptable medical sources," such as Nurse Myers.   Now, the ALJ
must consider the following factors:

> How long the source has known and how
> frequently the source has seen the individual;
>
> How consistent the opinion is with other evidence;
>
> The degree to which the source presents

relevant evidence to support an opinion;

How well the source explains the opinion;

Whether the source has a specialty or area of
expertise related to the individual's
impairment(s); and

any other factors that tend to support or
refute the opinion.

SSR 06-03p; 71 FR 45593-03, 2006 WL 2263437(FR)(Aug. 6, 2006).

In this case, I conclude the ALJ on remand erred in not evaluating Nurse Myers' opinion in the manner set forth under the new provisions of SSR 06-03p, which were in effect when he issued his decision.  The record, however, also reflects that Nurse Myers relied in large part on the accuracy of plaintiff's description of the impact of her impairments on her lifestyle in making a disability determination.  The ALJ found plaintiff was not a credible witness in describing the impact of her mental impairments on her lifestyle, Judge King upheld that finding, and I have concurred in that finding on remand.  For these reasons, I conclude that any error by the ALJ in evaluating Nurse Myers' opinion was harmless.  See Carmickle v. Commissioner, 533 F.3d 1155, 1162 (9th Cir. 2008).

c.    **Failure to Consider Patricia Pagano's Treatment Records**.

On September 21, 2006, eight days before the ALJ issued his decision on remand, plaintiff submitted a six-year old report from Pagano relating to the mental health therapy Pagano provided to plaintiff on ten occasions, six of which were

14 - OPINION AND ORDER

conducted by telephone.  The ALJ did not refer to Pagano's report
in his decision.  The Appeals Council, however, reviewed and
considered the report in reaching its decision denying
plaintiff's appeal.  The Appeals Council concluded the report did
not alter the outcome because it was a duplicate of Exhibit 8F,
which the ALJ had considered.  In fact, Exhibit 8F contained the
treatment records provided by Nurse Myers.  Nevertheless, Myers
records and Pagano's report both contain similar repetitive
and/or cumulative information relating to plaintiff's subjective
complaints of anxiety and panic attacks.  To the extent there was
any error by the ALJ and/or the Appeals Council in considering
Pagano's report, I conclude it was harmless.  <u>Carmickle</u>, 533 F.3d
at 1162.

**d.**    **<u>Failure to Consider Dr. Alvarez's Treatment Records</u>**.

Plaintiff also submitted Dr. Alvarez's treatment records
from 2004-2005 to the Appeals Council.  She acknowledged the
records reflected treatments after the date she was last insured.
She contended, however, the records showed plaintiff suffered
from an "additional severe impairment of Generalized Anxiety
Order (<u>sic</u>)" and a GAF score of 50.  The Appeals Council declined
to consider the evidence because the treatment for the impairment
was provided "well after the time period under consideration and
does not pertain to the claimant's medical status during that
period."  Tr. 251.

I find no error in the Appeals Councils's determination. Moreover, even if this evidence were considered, it does not reflect any additional limitations in plaintiff's ability to work that were not considered by the ALJ and/or the Appeals Council. In addition, as with Myers and Pagano, Dr. Alvarez's impressions and opinion were based in large part on plaintiff's discredited self reports.

**e.    Failure to Find Plaintiff has a Listed Impairment**.

Plaintiff contends the medical and other evidence, if credited as true, supports a finding that plaintiff has a Listed Impairment.  As set forth above, however, plaintiff's medical and other evidence regarding the severity of her impairments, appropriately, are not credited as true.

### CONCLUSION

For these reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action with prejudice.

IT IS SO ORDERED.

DATED this /0 day of August, 2009.


MALCOLM F. MARSH
United States District Judge